IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, :
:
v. : CRIMINAL ACTION NO. 14-cr-00315-01
:
ADOLPHUS WILLIAM CATO :
: CIVIL ACTION NO. 19-cv-01112
:
:

FILED
OCT 18 2019
KATE BARKMAN, Clerk
By_____ Dep. Clerk

### ORDER

**AND NOW** this ___17th___ day of __October__, 2019, upon careful and independent consideration of Adolphus William Cato's petition for writ of habeas corpus (Doc. No. 627), the United States' response in opposition (Doc. No. 632), Cato's reply (Doc. No. 635), and the Report and Recommendation of U.S. Magistrate Judge Richard A. Lloret, it is **ORDERED** that:

1. The Report and Recommendation of Magistrate Judge Richard A. Lloret is **APPROVED** and **ADOPTED**;

2. Cato's Petition for Writ of Habeas Corpus is **DENIED** and **DISMISSED** with prejudice by separate Judgment, filed contemporaneously with this Order. *See* Federal Rule of Civil Procedure 58(a); Rules Governing Section 2255 Cases in the United States District Courts, Rule 12;

3. No certificate of appealability shall issue under 28 U.S.C. § 2253(c)(1)(B) because "the applicant has [not] made a substantial showing of the denial of a constitutional right[,]" under 28 U.S.C. § 2253(c)(2), since he has not demonstrated that "reasonable jurists" would find my "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see United States v. Cepero*, 224 F.3d 256, 262-63 (3d Cir.

2000), *abrogated on other grounds by Gonzalez v. Thaler*, 565 U.S. 134 (2012); and,

4. The Clerk of Court shall mark this file closed.

BY THE COURT:

_____
HON. WENDY BEETLESTONE
U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL ACTION NO. 14-cr-00315-01 |
| ADOLPHUS WILLIAM CATO | : CIVIL ACTION NO. 19-cv-01112 |

## JUDGMENT

In accordance with the Court's separate Order, filed contemporaneously with this Judgment, on this **17th** day of **October**, 2019,

### JUDGMENT IS ENTERED

**DENYING AND DISMISSING WITH PREJUDICE** Adolphus William Cato's Petition for Writ of Habeas Corpus.

BY THE COURT:

_____
HON. WENDY BEETLESTONE
U.S. District Court Judge

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL ACTION NO. 14-cr-00315-01 |
| ADOLPHUS WILLIAM CATO | : |
| | : CIVIL ACTION NO. 19-cv-01112 |

### REPORT AND RECOMMENDATION

**RICHARD A. LLORET**                                                               **September 10, 2019**
**U.S. MAGISTRATE JUDGE**

Mr. Cato (also referred to as the "defendant") has filed a motion under 28 U.S.C. § 2255 to vacate his conviction for aggravated identity theft. *See* Doc. No. 627.[1] He entered a plea of guilty to the charge on August 25, 2015. *See* Doc. No. 396 (change of plea hearing transcript). After a colloquy under oath, the court accepted his guilty plea, and later sentenced Mr. Cato to eighty months incarceration and five years supervised release, along with an order of restitution of $149,907.64 and a special assessment of $700.00. *See* Doc. No. 530.

Mr. Cato claims that he did not understand that the government had to prove he knowingly used a real person's identifying information to convict him of aggravated identity theft, and that his attorney did not tell him about this requirement. Mr. Cato claims he would not have pleaded guilty if he had known this, and that his attorney's failure to inform him was a violation of his Sixth Amendment right to counsel. Mr. Cato also argues that the Government failed to demonstrate, at his guilty plea hearing, that he

---

[1] All references to the electronically docketed record will be cited as "Doc. No. ___, at ___."

knew the personal identifying information he used to commit bank fraud belonged to a real person.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Cato was charged with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371; seven counts of bank fraud, in violation of 18 U.S.C. § 1344; two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and three counts of the use of a counterfeit and unauthorized access device, in violation of 18 U.S.C. § 1029(a)(2). Doc. No. 95. Mr. Cato and his eight co-conspirators stole personal identification information and used this information to get bank loans, from which money was then taken, and cash fraudulent checks. *Id.* On August 25, 2015, the defendant pleaded guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371 (Count 1); five counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts 3, 4, 6, 7, and 8); and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 9). Doc. Nos. 316, 396. On June 21, 2016, Judge Wendy Beetlestone sentenced Mr. Cato to fifty-six months' imprisonment on the conspiracy and bank fraud counts, to be served concurrently, followed by a mandatory, consecutive twenty-four-month term of incarceration for the aggravated identity theft count. The court also imposed five years of supervised release, a $149,907.64 restitution obligation, and a special assessment of $700. Doc. No. 539.

Mr. Cato appealed his sentence. Doc. No. 534. In his appeal, he argued that the trial court erred in determining the amount of intended fraud loss for purposes of calculating his advisory sentencing guidelines range. *United States v. Cato*, 718 F. App'x 123 (3d Cir. 2017) [hereinafter *Cato I*]. The court of appeals rejected Mr. Cato's

argument and affirmed his conviction and sentence.[2] Doc. No. 604. The defendant then filed a *pro se* motion to vacate his twenty-four-month sentence for aggravated identity theft.[3] Doc. No. 627. The matter has been referred to me for a report and recommendation. Doc. No. 636.

## DISCUSSION

Rule 4(b) of the Rules Governing § 2255 Proceedings requires the summary dismissal of a § 2255 petition "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." The rule applies in this case and requires summary dismissal of Mr. Cato's § 2255 petition.

Mr. Cato claims that he did not know that the government had to prove he knowingly used a real person's identifying information to convict him of aggravated identity theft, and that he would not have pleaded guilty had he known. He claims that his attorney did not tell him about this requirement, and that in failing to do so, failed to provide Mr. Cato with the effective representation to which he is entitled under the Sixth Amendment. Mr. Cato also argues that the Government did not provide evidence at his guilty plea hearing that he knew that the personal identifying information he used to commit bank fraud belonged to a real person.[4]

---

[2] Mr. Cato did not petition for certiorari with the Supreme Court, so his conviction became final in March of 2018.

[3] Mr. Cato also filed a motion pursuant to Rule 36, requesting a correction of a clerical error in his judgment of sentence. *See United States v. Cato*, 740 F. App'x 15, 15–16 (3d Cir. 2018) (per curiam) [hereinafter *Cato II*]. He argued that the judgment of sentence conflicted with the transcript from his sentencing hearing, and therefore his prison sentence should reflect the length stated in the transcript (eighteen months) not the judgment (eighty months). *Id.* at 16. The District Court denied the motion, and the Third Circuit summarily affirmed. *Id.* at 16–17.

[4] In his habeas petition, Mr. Cato contends that the government failed to "provide proof" that he "knew that the identifying information belonged to a real person at the time" the information was misused. Doc.

3

The transcript of the defendant's guilty plea colloquy makes it clear that these claims are meritless. At the plea colloquy, Mr. Cato was properly informed that one of the essential elements of the offense was that he knowingly stole a real person's identity. N.T. 8/25/2015, at 23. He acknowledged that he understood this. *See id.* at 24.[5] He agreed that he did this. *See id.* at 46 (pleading guilty to aggravated identity theft). The defendant admitted that he used the identities of at least *nine* real people to fraudulently obtain a series of bank loans. *See id.* at 42–45 (admitting facts set forth in various paragraphs of the government's guilty plea memorandum). This series of frauds included using the identity of victim "M.B." to get a fraudulent loan, from which he attempted to obtain the proceeds. *See id.* at 43 (admitting to facts set forth in paragraph ten of the government's guilty plea memorandum).[6] This served as the factual basis for

---

No. 627, at 5. The government correctly notes that because Mr. Cato "waived his right to have the [g]overnment prove each element of the offense beyond a reasonable doubt when he entered a guilty plea," this claim should be construed as "a challenge to the Court's factual basis for accepting [Mr. Cato's] guilty plea, and an assertion that his attorney was ineffective for failing to make this objection." Doc. No. 632, at 6 (citing to *United States v. Rice*, No. 11-344, 2014 WL 2475982, at *3 (E.D. Pa. May 30, 2014) (DuBois, J.)).

Additionally, Mr. Cato's guilty plea agreement contained a collateral-attack waiver. In its response, the government does not invoke, or mention, this waiver. Instead, the government addressed the merits of Mr. Cato's claims. Because I find Mr. Cato's claims to be meritless, I do not need to decide the applicability of the collateral-attack waiver to these claims. *See Rice*, 2014 WL 2475982, at *2 n.5.

[5] After the prosecutor explained the elements of the charges, the following exchange occurred:

| | |
|---|---|
| THE COURT: | Mr. Pinto, have you explained the nature and elements of the offenses to your client? |
| MR. PINTO: | I have, Your Honor. |
| THE COURT: | And, Mr. Cato, has your lawyer explained the elements of the charges to you? |
| MR. CATO: | Yes. |
| THE COURT: | Do you have any questions about the elements of the charges? |
| MR. CATO: | No, ma'am. |

N.T. 8/25/2015, at 24.

[6] Paragraph ten of the government's guilty plea memorandum states:

On or about February 19 and 20, 2014, defendant Cato and co-defendants Herrington, Jobe, and Michael Jaje, using counterfeit identification in the name of victim "M.B.,"

his aggravated identity theft conviction. Mr. Cato acknowledged under oath that all this was true.

The defendant's claim that his trial counsel failed to advise him of an element of the offense cannot succeed, based on what the defendant himself heard and said at the guilty plea hearing. This is because the test for whether counsel was ineffective includes a prejudice prong. *See Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to ineffective assistance of plea counsel claims).

That means Mr. Cato has to prove both that his attorney failed to perform up to professional standards, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688–89, 694; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."); *Hill v. Lockhart*, 474 U.S. at 59 ("The

---

attempted to obtain $17,500 from a fraudulently obtained loan in the name of victim "M.B.," at a Santander Bank branch located in West Chester, Pennsylvania.

Doc. No. 316, at ¶ 10.

For background, the government explained that Mr. Cato "applied for bank loans online utilizing the personal identifying information of real victims without their knowledge or consent." Doc. No. 316, at 4; *see also* N.T. 8/25/2015, at 25 (describing the scheme as having individuals "obtaining the proceeds of fraudulent loans arranged on line [sic] by defendant Cato, all using counterfeit identifications provided by defendant Cato"). It appears that Mr. Cato neither specifically admitted nor disputed these contextual facts. After the prosecutor described the underlying facts to support Mr. Cato's guilty plea, the court provided Mr. Cato with an opportunity to object. *See* N.T. 8/25/2015, at 33. Mr. Cato's attorney brought several objections to the court's attention, none of which impacted Mr. Cato's guilty plea but rather had sentencing implications. *Id.* at 33–39. When the court asked Mr. Cato if he agreed to remainder of the evidence, Mr. Cato stated that he did not do "everything [the prosecutor] described." *Id.* at 39–40. At the suggestion of the prosecutor, the court allowed Mr. Cato to privately discuss with his attorney the government's guilty plea memorandum, and then the Court, on the record, went through the memorandum, asking Mr. Cato to admit or dispute each numbered paragraph. *Id.* at 40–45. Missing from this colloquy was a discussion of the background information from the guilty plea memorandum. Mr. Cato's attorney then confirmed that the facts that his client admitted to did not change the fact that his client was guilty of the charges and that there was a factual basis for the plea. *Id.* at 45–46. Mr. Cato then personally admitted that he was guilty of each offense. *Id.* at 46.

5

second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."). He cannot do that here because Mr. Cato was told in person, on the record, under oath about the essential elements of the offense to which he was pleading. Even if his attorney did not tell him about the knowledge requirement—and I do not believe that claim is true[7]—it does not matter. *See United States v. Solomon*, No. 06-222, 2009 WL 2431316, at *4 (E.D. Pa. Aug. 6, 2009).[8] The court told him, and Mr. Cato said he understood. N.T. 8/25/2015, at 23–24. His plea agreement, which he signed, explained the knowledge requirement. Doc. No. 316, at 1 ("The defendant agrees to plead guilty to . . . knowing and without lawful authority, use and aid and abet the use of, the name and personal identifying information of a victim during and in relation to bank fraud."). He testified that he read the plea agreement and that his lawyer discussed and explained it to him. N.T. 8/25/2015, at 11–12. Mr. Cato's claim is frivolous.

Mr. Cato's claim that his trial counsel improperly failed to raise a challenge to the factual basis for his plea fails because there *was* an adequate factual basis for the plea. The transcript of the guilty plea hearing, along with paragraphs of the plea memorandum that Mr. Cato admitted to, make the factual basis for his guilty plea clear. "On or about and between February 19 and 20, 2014, defendant Cato and co-defendants Herrington, Jobe, and Michael Jaje, using counterfeit identification in the name of

---

[7] Because Mr. Cato's claim fails on *Strickland*'s prejudice prong, there is no need to hold a hearing and require the attorney to testify about what he told Mr. Cato. *See Strickland*, 466 U.S. at 697 (a district court is not required to address the performance prong if it can dispose of the case on the prejudice prong).

[8] "[E]ven if his counsel was deficient in explaining to [the defendant] the elements of the charged offenses, [the defendant] did not suffer any prejudice because (1) the elements were explained in detail to [the defendant] during the plea colloquy, and the court confirmed that [the defendant] understood the elements prior to accepting his guilty plea; and (2) the government summarized the facts that it was prepared to prove at trial, [the defendant] admitted the facts accurately set forth the events as he recalled them, and I confirmed that the facts fit the charges against him." *Solomon*, 2009 WL 2431316, at *4.

6

victim 'M.B.,' attempted to obtain $17,500 from a fraudulently obtained loan in the name of victim 'M.B.,' at a Santander Bank branch located in West Chester, Pennsylvania." Doc. No. 316, at ¶ 10; *see also* N.T. 8/25/2015, at 43 (admitting to facts set forth in paragraph ten of the plea memorandum). Counsel's failure to challenge the factual basis of the plea was not a violation of *Strickland. See* 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Counsel cannot be ineffective for failing to bring a meritless claim. *United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015) ("'[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'" (quoting *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999))).

To support his claims, Mr. Cato challenges the government's reliance on *United States v. Rice*, No. 11-344, 2014 WL 2475982 (E.D. Pa. June 2, 2014) (DuBois, J.), instead pointing to *United States v. Morgan*, No. 06-0164, 2010 WL 1714705 (E.D. Pa. April 27, 2010) (Yohn, J.), as persuasive authority. I find Mr. Cato's argument unconvincing.

In *Rice*, the defendants had pleaded guilty to aggravated identity theft relating to, among others, a scheme that involved using a real person's information to obtain credit at a jewelry store. Denying the § 2255 motions challenging their guilty pleas, the court found that there was an adequate factual basis to conclude that the petitioners "knew the means of identification they possessed belonged to real people" and therefore support their guilty pleas. 2014 WL 2475982, at *3. "Without someone else's funds or credit to access, defendants' scheme would have been pointless." *Id.* (citing to *Dolan v. United States*, No. 09-cv-893, 2009 WL 2852988, at *7 (D. Conn. Sept. 2, 2009)

7

("There would be no point in taking financial information from a non-existent being when the purpose of the scheme was to use it to access existing credit or funds.")). These facts were enough to "provide a sufficient factual basis to conclude that defendants knew they were using the means of identification of real people." *Id.* (citing to *United States v. Norman*, 465 F. App'x 110, 119 (3d Cir. 2012)). I agree with the government that the same logic applies here: Mr. Cato's scheme depended on using a real person's identity and good credit to fraudulently obtain a bank loan and its proceeds. The use of a real person's identity was essential to his scheme. Even assuming Mr. Cato did not know the information belonged to a real person when he applied for the bank loan online, as suggested in the declaration appended to his reply brief,[9] he knew that the information belonged to real person *when the loan was approved*, and he and his co-defendants attempted to obtain the funds from these loans. Accordingly, I find that there were sufficient facts in the record to support Mr. Cato's guilty plea.

I find the facts of *Morgan* distinguishable. In that case, the defendant filed a § 2255 motion to vacate his guilty plea for aggravated identity theft. *Morgan*, 2010 WL 1714705, at *1. Relying on *Flores-Figueroa v. United States*, 556 U.S. 646 (2009),[10] the court granted the defendant's motion, finding the government failed to establish that

---

[9] Mr. Cato described his identity theft scheme in his declaration as follows:

> I often used what I believed was fake information to apply for lines of credit at banks, hoping that it would be approved. *Most of the time the credit application was denied, precisely because the information that I was using was fake*. Thus, I had no way of knowing beforehand that any of the information that I used ("M.B.'s) [sic] turned out to belong to a real person. As stated above, I had no idea that M.B. was a real person until after my arrest.

Doc. No. 635, at 22 (emphasis added). The import of the italicized line is that if a loan were approved, Mr. Cato was aware that the identity used was of a real person, not a fake.

[10] The Supreme Court held that aggravated identity theft, under 18 U.S.C. § 1028A(a), requires the government to establish that the defendant "knew that the means of identification at issue belonged to another person." *Flores-Figueroa*, 556 U.S. at 657.

8

"there was a factual basis in the record to conclude [the defendant] knew or cared at the time that he misused [the victim's] driver's license that it was authentic." *Id.* at *13. The court reasoned that this element could not be inferred by the nature of the crime because the defendant's "identity fraud scheme to create counterfeit identification documents did not necessarily require the misuse of authentic means of identification—the scheme might only have required the misuse of authentic looking means of identification—it cannot be inferred that [the defendant] knew at the time that he misused [the victim's] driver's license that it was authentic." *Id.* at *12. Here, unlike in *Morgan*, the defendant's scheme *necessarily required* the misuse of a real person's identity, as described above, and therefore I find Mr. Cato's reliance on *Morgan* to be unavailing.

## **RECOMMENDATION**

I respectfully recommend that Mr. Cato's petition be dismissed with prejudice. I recommend that no certificate of appealability issue under 28 U.S.C. § 2253(c)(1)(B) because "the applicant has [not] made a substantial showing of the denial of a constitutional right [,]" under 28 U.S.C. § 2253(c)(2), since he has not demonstrated that "reasonable jurists" would find my "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see United States v. Cepero*, 224 F.3d 256, 262-63 (3d Cir. 2000), *abrogated on other grounds by Gonzalez v. Thaler*, 32 S. Ct. 641 (2012).

The parties may object to this report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 72.1 within fourteen (14) days after being served with this report and recommendation. An objecting party shall file and serve written objections that specifically identify the portions of the report or

recommendations to which objection is made and shall provide an explanation of the basis for the objections. A party wishing to respond to objections shall file a response within fourteen (14) days of the date the objections are served.

**BY THE COURT:**

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**